DISTLER v. J. CHR. G. HUPFEL BREWING CO.

(Supreme Court, Appellate Division, First Department. February 10, 1911.)

Appeal from Trial Term, New York County.

Action by John Distler against the J. Chr. G. Hupfel Brewing Company. From a judgment dismissing the complaint on the trial, plaintiff appeals. Affirmed.

See, also, 127 N. Y. Supp. 1117.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, MILLER, and DOWLING, JJ.

Oscar R. Houston, for appellant.
Theodore H. Lord, for respondent.

PER CURIAM. Judgment affirmed, with costs.

LAUGHLIN, J. (dissenting). On the 9th day of December, 1907, the plaintiff, while in the employ of the defendant, was injured in a covered inclosed yard of its brewery on the northerly side of Thirty-Eighth street, between Second and Third avenues, by being struck by a descending elevator, and he brought this action under the employer's liability act (Consol. Laws, c. 31, §§ 200–204) to recover the damages sustained thereby. He was employed in the capacity of a driver of a beer wagon, but it was his duty to assist in loading and unloading kegs of beer and empty kegs in and about the premises when so directed by the foreman. It appears that the wagons were driven into the yard from Thirty-Eighth street, and that the course was around a driveway in the form of a horseshoe, and out by another door on the same street. Around this driveway on the inner side there was a platform from which beer kegs were loaded upon and unloaded from wagons standing in the driveway. The entrance was on the right and the exit on the left as you approached the building from the street. About 40 feet from the entrance at the right of the driveway, there was an elevator which was used to carry kegs up and down, but its use in connection with the platform or with the wagons is not shown. The elevator shaft did not extend below the ground floor of the building. The driveway was paved and the pavement extended under the elevator; part way, at least. The shaft of the elevator on this floor was not inclosed on the side towards the driveway, or on either the right or left as you would face the elevator from the driveway.

On the day in question plaintiff returned from delivering a load of beer, and was ordered to leave his team and wagon outside, and to go inside and help other employés of the defendant unload a wagon which was standing between where the elevator descends and the horseshoe platform. A wagon standing in that position occupies virtually all the space between the elevator shaft and the platform, and, if the elevator were down, it would be close to the side of the wagon, leaving no room to pass between them. Plaintiff on entering the building first went to the toilet, which was near and at the right of the entrance, and he then continued along the edge of or to the right of the driveway and to his right of the wagon, and under the elevator shaft, and was struck by the elevator which as he was passing under the edge of it descended without notice or warning. He says that, in order to go where he was directed to work, it was necessary to take the course which he did; that the pavement "was kind of broken up"; that it was getting dark and not well lighted, for there were only a few electric lights, and they were some distance away, and his attention was drawn to his feet and to the pavement where he was stepping; that he had been working for the defendant at this time about a month, but had worked for it about six months a year prior

thereto; that he knew where the elevator was, how it was used and operated, and that it was not inclosed at this floor, but that at the time of the accident he did not have it in mind, and was not thinking of it, but was thinking of picking his way over the cobblestones; that he received no warning, and did not hear it, and that his work only called him in the vicinity of the elevator occasionally. The complaint and notice served under the employer's liability act were sufficient to sustain a recovery on the theory of negligence on the part of a superintendent, and with respect to a "defect in the condition of the ways, works or machinery connected with or used in the business of the" defendant within the provisions of subdivision 1 of section 1 of the employer's liability act. Chapter 600, Laws 1902. Both the complaint and notice charge a violation of the provisions of section 95 of the Building Code of the City of New York with respect to providing the elevator shaft with a substantial guard or gate, but no claim appears to have been made on the trial under that statute, and none is made on the appeal.

Plaintiff relies on section 79 of the labor law (Gen. Laws, c. 32, § 79), which was amended by chapter 299, Laws 1909, by substituting "commissioner of labor" for "factory inspector," and re-enacted in the amended form as section 79, chapter 31, Consolidated Laws, which then provided, among other things, as follows:

"If, in the opinion of the factory inspector it is necessary to protect the life or limbs of factory employés, the owner, agent, or lessee of such factory where an elevator, hoisting shafts or well hole is used, shall cause, upon written notice from the factory inspector, the same to be properly and substantially enclosed, secured or guarded, and shall provide such proper traps or automatic doors so fastened in or at all elevator ways, except passenger elevators enclosed on all sides, as to form a substantial surface when closed and so constructed as to open and close by the action of the elevator in its passage either ascending or descending. The factory inspector may inspect the cable, gearing or other apparatus of elevators in factories and require them to be kept in a safe condition."

There is no evidence that the factory inspector gave any directions with respect to this elevator, but it is claimed that it was the duty of the defendant without action on the part of the factory inspector to take the precautions prescribed by the statute, and Freeman v. Glens Falls Paper Mills Co., 61 Hun, 125, 15 N. Y. Supp. 657, Id., 70 Hun, 530, 24 N. Y. Supp. 403, affirmed 142 N. Y. 639, 37 N. E. 567, Dieboldt v. U. S. Baking Co., 81 Hun, 195, 30 N. Y. Supp. 745, Arnold v. Nat. Starch Co., 194 N. Y. 42, 86 N. E. 815, 21 L. R. A. (N. S.) 178, McRickard v. Flint, 114 N. Y. 222, 21 N. E. 153, and Lee v. Sterling Mfg. Co., 115 App. Div. 589, 101 N. Y. Supp. 78, are cited in support of this contention.

In the view we take of the case, it is not necessary to decide whether the claim that the defendant violated this statutory provision is or is not well founded, for we are of opinion that the evidence presented a question for the jury as to whether the accident was not due to a defect in the condition of the ways, works, and machinery, connected with or used in the business of the defendant, which arose from or had not been discovered or remedied owing to the negligence of the defendant or of some person in its service intrusted by it with the

'duty of seeing that the ways, works, and machinery were in proper condition, and as to whether the plaintiff exercised due care, and as to whether he assumed the risk of such an accident. The term "defect" with respect to ways, works, and machinery as used in similar statutes in other jurisdictions has been liberally construed by the courts, and has been held to embrace, not merely defects owing to want of repair, but the unsuitableness of the way, work, or machinery in view of the manner in which it was intended to be and was used, and also the failure to provide guards about an elevator, although none were provided originally. Heske v. Samuelson, 12 Q. B. D. 30; Geloneck v. Dean Steam Pump Co., 165 Mass. 202, 43 N. E. 85; Donahue v. Washburn & Moen Mfg. Co., 169 Mass. 574, 48 N. E. 842; Alger and Slater on the Employers' Liability Act (2d. Ed.) pp. 26–28. The jury would have the right to find on the evidence, not only that the elevator itself, which was part of the works and machinery provided by the defendant, in view of the manner in which it was constructed and operated, was unsafe, but they would also be justified in finding that in leaving the elevator shaft at that floor uninclosed the defendant in requiring men to work about a wagon standing between the elevator and the platform furnished and provided the pavement at the bottom of the elevator shaft as a way for the use of its employés in performing their duties, and that it was an unsafe way. Willetts v. Watt & Company, L. R., 2 Q. B. Div. 1892, 92, 98; Nappa v. Erie R. R. Co., 195 N. Y. 176, 88 N. E. 30, 21 L. R. A. (N. S.) 96. It cannot be held as a matter of law that plaintiff was guilty of contributory negligence, for, although he knew the situation, he says he did not have it in mind at the time, and whether the facts excused him from being on his guard was for the jury. Weed v. Village of Ballston Spa, 76 N. Y. 329; Boyle v. Degnon-McLean Cons. Co., 47 App. Div. 311, 313, 61 N. Y. Supp. 1043; Palmer v. Dearing, 93 N. Y. 7. The action being under the employer's liability act, the question as to whether the plaintiff assumed the risk incident to the manner in which the elevator was constructed and operated or was guilty of contributory negligence by continuing in the employment with knowledge of the risk of injury was by the express provisions of section 3 of the act a question of fact for the jury.

I am in favor of a reversal of the judgment.

MILLER, J., concurs.